IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Misty Elaine Kozlowski,                          :

              Plaintiff,            :       Civil Action 2:12-cv-885

         v.                                :       Judge Graham

Corolyn W. Colvin,                               :       Magistrate Judge Abel
Acting Commissioner of Social Security,
                               :

             Defendant.             :

                               :

**REPORT AND RECOMMENDATION**

Plaintiff Misty Elaine Kozlowski brings this action under 42 U.S.C. §§405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security denying her applications for Social Security Disability and Supplemental Security Income benefits.  This matter is before the Magistrate Judge for a report and recommendation on the administrative record and the parties' merits briefs.

**Summary of Issues.**  Plaintiff Kozlowski maintains that she became disabled on September 1, 2008, at age 48, due to a heart attack, memory loss, angina, numbness in face, high cholesterol, bladder problems, high blood pressure, anxiety, depression and asthma.  (*PageID* 212.)  The administrative law judge found that Kozlowski could perform a reduced range of sedentary work, including her former work as a graphic designer and advertising manager. (*PageID* 81 and 92.)  Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because the administrative law judge failed to give the required weight to the opinion of Plaintiff's treating

physician.  In the alternative, Plaintiff asserts that the administrative law judge should have recontacted the treating source for clarification instead of giving the treating source opinion no weight.  *See* Doc. # 12.

**Procedural History.**  Plaintiff Kozlowski protectively filed her applications for disability insurance benefits and supplemental security income on March 25, 2009, alleging that she became disabled on September 1, 2008, at age 48.  (*PageID* 179-85, 186-93.)  The applications were denied initially and upon reconsideration.  Plaintiff sought a *de novo* hearing before an administrative law judge.  On June 6, 2011, an administrative law judge held a video hearing at which plaintiff, represented by counsel, appeared and testified.  (*PageID* 31-60.)  A vocational expert also testified.  (*PageID* 60-64.)  On June 30, 2011, the administrative law judge issued a decision finding that Kozlowski was not disabled within the meaning of the Act.  (*PageID* 76-93.)  On July 24, 2012, the Appeals Council denied Plaintiff's request for review and adopted the administrative law judge's decision as the final decision of the Commissioner of Social Security.  (*PageID* 99-104.)

**Age, Education, and Work Experience.**  Kozlowski was born on October 22, 1959.  (*PageID* 36, 208.)  She has a high school education.  (*PageID* 37, 219.)  Kozlowski previously worked 12 years as an advertising manager for a local tire company and 11 years as a graphic artist for a communications company.  (*PageID* 213.)

**Plaintiff's Testimony.**  The administrative law judge summarized Kozlowski's testimony as follows:

The claimant testified at the hearing that she has had four stents placed in 2010. She stated that she is still in cardiac rehabilitation and she has not yet regained her stamina or endurance. She stated that even after having the four stents, she is tired. The claimant noted that Plavix makes her tired, and all she wants to do is sleep. She stated that it is a chore for her to get up and get ready. She also has hypertension and reflux. The claimant stated that she had a bulging disc when she was younger, and now she has deteriorating spurs and arthritis in her neck and lower back. She stated that because of her stents she is unable to have an MRI or certain kinds of x-rays. The claimant stated that her mental issues began when she was working 16 to 18 hours per day and trying to care for her home and children. She stated, "I kind of got cranky." She stated that she was diagnosed with anxiety. The claimant indicated that her worst pain is in the lower part of her back and in her neck. She is on Percocet for pain, and she goes to the doctor about once per week for a cortisone shot. She stated that she is going through cardiac rehabilitation now. She started this in late February 2011. The claimant testified that she tries to walk up three steps for exercise. Her pain is worsened by standing, doing dishes and folding clothes. Sitting for a period also causes her back to lock up on her, and so does bending over. The claimant stated that she could walk for a little while and then her back is irritated. She stated that if she does things, her pain goes up to a five or six out often. She noted that she had bladder surgery, which failed.

The claimant noted that Plavix makes her tired. Xanax calms her down. She stated that her antidepressant dosage was increased, and this has helped her. The claimant estimated that she could walk for about a quarter of a mile. She could stand for about 15 minutes. She stated that is able to bend, but if she does so too much her back locks up on her. The claimant estimated that she could lift about 10 to 15 pounds and sit for 15 to 20 minutes. She stated that she is not seeing a psychiatrist or psychologist, but her doctor has discussed referring her to one. She noted that she also has asthma, which is worsened by weather, pollen and mold. The claimant testified that she gets tired after walking about a quarter of a mile and then she has to sit down or lie down. She does things around the house but she gets tired quickly and will have to take a nap. The claimant stated that she quickly gets mentally stressed. She stated that she is always in bed because she is tired. She is able to care for her own personal needs. She does make meals. The claimant indicated that she tries to do chores such as dishes and straightening up. Her husband usually does the floors and her daughter helps her out. She does the laundry and puts it in

3

the dryer and other family members will fold it and put it away.  The claimant noted that she goes to the market about once per week, as she does not have much money for it.  She plays cards and watches television.

**Medical Evidence of Record.**  The administrative law judge's decision fairly sets out the relevant medical evidence of record.  This Report and Recommendation will only briefly summarize the relevant evidence.

**Wheeling Hospital.**  Kozlowski was hospitalized from July 18 - 28, 2007.  She presented with chest pain and was diagnosed with a myocardial infarction.  A cardiac catheterization revealed multi-vessel coronary artery disease, and she underwent coronary artery bypass grafting without complications.  While hospitalized, she complained of chronic headaches.  A neurological consultation was obtained, and Kozlowski was diagnosed with muscle contraction headaches.  A CT scan of the head was normal.  (*PageID* 272-346.)

**Trent Mason, M.D.**  The record contains treatments notes from primary care physician, Dr. Mason from May 2008 until May 2011.  (*PageID* 405-35, 517-23, 554-71.) The record reveals that in addition to handling Plaintiff's general care, Dr. Mason treated her and/or noted in Kozlowski's history various ailments, including gastroesophageal reflux symptoms and gastritis, coronary artery disease ("CAD"), hyperlipidemia, hypertension, anxiety,  irritable bowel syndrome, and back pain.  The record further shows that Dr. Mason prescribed various medications for Plaintiff's illnesses.

In June 2008, when seen in follow up for her cholesterol, Dr. Mason noted that Plaintiff was losing weight and that her blood pressure "is fine." (*PageID* 415.)   The following month, Dr. Mason noted that in follow up to her CAD, GERD, hyperlipidemia, hypertension, anxiety disorder and nicotine addiction she is doing very well and headed in the right direction. *Id.*

On September 8, 2008, Dr. Mason gave Kozlowski samples of Pristiq due to her complaints of having a lot of emotional difficulty at home and she was no longer working at that time. (*PageID* 414.) On October 2, 2008, Kozlowski told Dr. Mason that she had stopped the Pristiq, as it was not effective.  She continued to take Xanax. *Id.* On October 13, 2008, Kozlowski told Dr. Mason that she was experiencing a lot of nausea, but she thought it was due to her anxiety flaring up.  Her Vytorin medication dosage was lowered. *Id.*

On November 21, 2008, Kozlowski complained of headaches, visual changes, paresthesias, pain in the back of the knees and short-term memory loss.  Dr. Mason was concerned about a closed head injury or post-concussion syndrome as Kozlowski had hit her head on an air conditioning unit.  He recommended a neuropsychological evaluation. (*PageID* 405.)

On March 26, 2009, Kozlowski had asked to be placed on Celexa as she felt overwhelmed and depressed. *Id.*  On May 21, 2009, Dr. Mason noted that Kozlowski was also going to go to Dr. Pizzaro, who may send her to Dr. Jirak for incontinence and also back to Dr. Chaudhry eventually to talk about the Nissen fundoplication for severe

5

acid reflux.  Kozlowski reported to Dr. Mason that she did not want to take Xanax anymore as she was doing fine on Celexa.  (*PageID* 523.)

On November 9, 2009,  Kozlowski was seen for irritable bowel syndrome and a cough.  Dr. Mason increased her dosage of Celexa, noting , "Work on emotions but make sure that she does not have any side effects."  (*PageID* 521.)  The following month, she noted that she was doing better with the increased dosage of Celexa.  (*PageID* 520.)

On April 29, 2010, Dr. Mason diagnosed Kozlowski with acute on chronic thoracic and lumbar spasm.  He stated that Kozlowski had a history of back issues with a herniated disc, and he indicated that she might need physical therapy.  However, he stated, "This is a short-term issue."  He prescribed Percocet for Kozlowski's pain. (*PageID* 519.)

On June 3, 2010, Kozlowski reported to Dr. Mason that she had an asthma attack the previous day, which she attributed to allergies.  Dr. Mason gave Kozlowski a steroid shot for her low back pain and refilled her Albuterol inhaler and Percocet.  (*PageID* 518.)

In November 2010, Dr. Mason wrote a letter "To Whom It May Concern" expressing his opinion that Kozlowski is not employable. He had treated her since 2004. He diagnosed coronary artery disease, hypertension, hyperlipidemia, gastroesophageal reflux disease, a history of Bell's palsy, history of iron-deficiency anemia, osteoarthritis, severe depression, and severe anxiety.  Dr. Mason stated his medical opinion that based on Kozlowski's

chronic medical conditions, and how she has been doing both physically
and emotionally, at least for the last couple of years, Misty cannot hold
any meaningful, gainful employment or job.  She definitely cannot do 40
hours of any type of work, which would not matter if it was anything
from labor perspective, or something non-labor perspective.  In my
medical opinion, she cannot do any meaningful work.  Again, these are
chronic medical conditions, and she is unstable at this time, certainly from
an anxiety and depressive standpoint as well, which we are working on.

If there are any questions, please call my office . . . .

(*PageID* 579.)

On November 29, 2010, Dr. Mason discussed smoking cessation with Kozlowski

and he prescribed Chantix.  (*PageID* 556.)  When seen by Dr. Mason on December 10,

2010, he noted that he would allow Kozlowski to take her pain medication four times

per day, noting that she had a history of osteoarthritis and chronic intermittent back

pain.  (*PageID* 555.)  Dr. Mason noted on February 24, 2011, that Kozlowski had

complained of low back pain.  He diagnosed her with chronic lingering low back pain,

and gave her a shot of Toradol.  (*PageID* 554.)

Plaintiff underwent MRI's of both her cervical and lumbar spines in March 2011.

The lumbar spine MRI showed mild interspace narrowing from L1 through L5, and

marginal spurs.  Mild degenerative changes of the apophyseal joints are present from

L4 through S1.  The Sl joints are unremarkable.  There was no spondylolysis or

spondylolisthesis.  (*PageID* 546.)  The cervical spine MRI showed no fracture or

malalignment.  There is moderate interspace narrowing at C5-6 and C6-7 with marginal

spurs anteriorly.  Spurs are also present posteriorly at C5-6 producing slight

encroachment upon the spinal canal.  There is no significant foraminal narrowing.
There are no significant degenerative changes of the apophyseal joints.  (*PageID* 547.)

**Madhu Dharawat, M.D.**  Kozlowski treated with cardiologist, Dr. Dharawat
following her July 2007 hospitalization through at least December 2010.  (*PageID* 387-99,
457-66, 498-99, 527-39.)

On November 8, 2007, he noted that Kozlowski was having episodes of chest
discomfort for five minutes after exercising, but these usually resolved after five
minutes and suspension of exercise, or with nitroglycerin.  (*PageID* 462-63.)

In July 2008, Dr. Dharawat, noted that Kozlowski was doing "very well" and that
she denied chest pain or shortness of breath; an EKG showed normal sinus rhythm with
nonspecific ST-T wave changes.  (*PageID* 389-90.)

Plaintiff underwent a left heart catheterization on November 27, 2008, which
revealed that the left anterior descending was totally occluded.  The left circumflex
artery was the dominant vessel, with mild to moderate stenosis after OMI.  The mid
right coronary artery had moderate disease.  (*PageID* 396-98.)

After complaining of a 10-15 minute episode of chest discomfort in January 2009,
Dr. Dharawat scheduled a stress test, which was negative for exercise-induced
ischemia. (*PageID* 387-88, 459.)  Kozlowski was seen by Dr. Dharawat in July 2009 for
cardiac clearance for bladder suspension surgery.  Dr. Dharawat reported that she was
"doing very well" from a cardiac standpoint and based on her history, presentation and

recent negative nuclear stress test, the probability of her having any significant perioperative cardiac complications is very low. (*PageID* 457-58.)

When seen for follow-up in August 2010, Dr. Dharawat noted that Kozlowski had experienced one episode of chest tightness, but she denied additional episodes and denied heart palpitations or dizziness. (*PageID* 498-99.) An October 12, 2010 echocardiogram revealed normal left ventricular size and systolic function, normal aortic valve without insufficiency, an enlarged left atrium with normal mitral valve, no mitral valve prolapse, normal right atrium and ventricle function with trace regurgitation, and no pericardial effusion. (*PageID* 534-35.)

When seen on November 4, 2010, Kozlowski reported that she had been experiencing some episodes of chest discomfort, and she complained of severe stress and depression as well as shortness of breath with deep breathing. (*PageID* 537-38.) A cardiac catheterization performed on November 12, 2010, revealed that the left anterior descending was totally occluded after the first diagonal, which was a small vessel. There was 80 percent stenosis in the mid left anterior descending and 90 percent stenosis in the mid right coronary artery with severe disease after the mid. (*PageID* 529-33.) On November 18, 2010, Kozlowski underwent angioplasty with placement of four stents. (*PageID* 528, 572-74.) A December 2010 stress test was stopped due to fatigue but revealed no evidence of exercise-induced ischemia. (*PageID* 527.)

**Cesar R. Pizarro, M.D.** Kozlowski treated with Dr. Pizzaro for bladder problems in 2007 and 2008. Dr. Pizarro diagnosed Kozlowski with urinary incontinence which

was controlled with medication.  (*PageID* 357-60.)  On May 21, 2009, Kozlowski reported that her incontinence had not improved and Dr. Pizarro recommended an Obturator sling procedure.  (*PageID* 497.)  Kozlowski underwent this procedure in July 2009.  (*PageID* 509-13.)  On October 15, 2009, Kozlowski reported that her urinary incontinence had improved a little bit.  (*PageID* 490-91.)  By January 13, 2010, she stated that she still had persisting urinary incontinence that had worsened somewhat.  Dr. Pizarro advised Kozlowski that the sling procedure had probably failed, and he referred her to Dr. Jirak for further evaluation.  (*PageID* 488-89.)

**George V. Jirak, M.D.**  Kozlowski reported to Dr. Jirak on September 1, 2010, that she voided at least ten times per day with nocturia one to two times.  She also reported urge-associated urine loss as well as stress urine loss, and she stated that she leaked at least five times daily and had to wear pads and full protective undergarments.  Dr. Jirak diagnosed her with recurrent urinary incontinence, with demonstrated stress incontinence even after catheterization, and probable mixed incontinence pattern.  He ordered a urodynamic study and cystoscopy.  (*PageID* 524-26.)  On October 1, 2010, Dr. Jirak planned to proceed with a TVT/mid-urethral sling procedure to treat her recurrent stress urinary incontinence.  (*PageID* 544-45.)

**Sanjay Chaudhry, M.D.**  In addition to Dr. Mason, Kozlowski treated with Dr. Chaudhry for her gastroesophageal reflux symptoms and gastritis.  In January 2009, Dr. Chaudhry's physician's assistant saw Kozlowski for complaints of intractable reflux.  A May 2008 EGD had revealed a moderate-sized hiatal hernia, non-erosive reflux and

10

gastritis.  Kozlowski was instructed to stop smoking, lose weight, and return in six
months.  (*PageID* 478.)  On July 27, 2009, Kozlowski complained of excess belching and
flatus, but stated that her burning was much better since she had stopped smoking. She
had normal active bowel sounds upon examination, and Dr. Chaudhry gave her an
anti-gas diet.  (*PageID* 477.)  On January 14, 2010, she complained of chronic diarrhea
since undergoing her sling surgery by Dr. Pizzaro in July 2009.  She noted that her
diarrhea was worse when she was under stress and she had also lost 13 pounds.  Dr.
Chaudhry stated that she appeared to have irritable bowel syndrome, and he put her on
Bentyl.  (*PageID* 481-82.)  Kozlowski underwent a colonoscopy on February 9, 2010,
which revealed diverticula and hemorrhoids.  (*PageID* 483.)

    **Reynolds Memorial Hospital**  Kozlowski was admitted to the hospital on April
27, 2011 with left-sided chest pain that did not improve with a nitroglycerin drip in the
emergency room.  Her pain subsided and she became hypotensive.  Cardiac enzymes
were negative, and an EKG showed no significant changes from baseline.  (*PageID* 540-
41.)  She was noted to have some COPD and chronic bronchitis issues, a history of
depression and anxiety, and chronic low back pain.  Kozlowski had no significant
shortness of breath.  *Id.*

    **W. Jerry McCloud, M.D./Walter Holbrook, M.D.**  On July 27, 2009, Dr.
McCloud, a state agency physician, conducted a physical residual functional capacity
assessment based on Kozlowski's record.  (*PageID* 467-74.)  Dr. McCloud found that
Kozlowski retained the ability to occasionally lift 50 pounds, frequently lift 25 pounds,

stand or walk about six hours in an eight-hour workday, sit for about six hours in an eight-hour work day, and push or pull was unlimited. (*PageID* 468.) He found Kozlowski could never climb ladders, ropes, or scaffolds. (*PageID* 469.) Dr. McCloud concluded that Kozlowski's symptoms were not attributable to a medically determinable impairment. (*PageID* 472.) Dr. McCloud found Kozlowski's statements were credible, noting that Kozlowski reported doing cleaning, laundry, running errands, etc. *Id.* Another state agency physician, Walter Holbrook, M.D. affirmed Dr. McCloud's assessment on January 16, 2010. (*PageID* 480.)

**Administrative Law Judge's Findings.** The administrative law judge found that:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.

2. The claimant has not engaged in substantial gainful activity since September 1, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: coronary artery disease status post coronary artery bypass grafting and stent placement times two; back pain due to osteoarthritis of the lumbar and cervical spines; hypertension and gastroesophageal reflux disease (GERD) ((20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the [administrative law judge] finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that she should never climb ladders, ropes or scaffolds. She should

only occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. She should avoid concentrated exposure to temperature extremes of heat and cold, vibration, and hazards of unprotected heights and moving plant machinery.

6. The claimant capable of performing past relevant work as a graphics designer and advertising manager. This work does not require the performance of work related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from September 1, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(*PageID* 78-92.)

**Standard of Review**. Under the provisions of 42 U.S.C. §405(g), "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. . . ." Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229 (1938)). It is "'more than a mere scintilla.'" *Id.* *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976). The Commissioner's findings of fact must be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Houston v. Secretary*, 736 F.2d 365, 366 (6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" *Beavers v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)(quoting

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1950)); *Wages v. Secretary of Health and Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).

**Plaintiff's Arguments.**  Plaintiff argues that the administrative law judge erred in rejecting the opinion of Dr. Mason that Kozlowski was disabled.

**Analysis.**  <u>Treating Physician: Legal Standard.</u>  A treating doctor's opinion[1] on the issue of disability is entitled to greater weight than that of a physician who has examined plaintiff on only one occasion or who has merely conducted a paper review of the medical evidence of record.  *Hurst v. Schweiker*, 725 F.2d 53, 55 (6th Cir. 1984); *Lashley v. Secretary of Health and Human Services*, 708 F.2d 1048, 1054 (6th Cir. 1983).  The Commissioner's regulations explain that Social Security generally gives more weight to a treating doctors' opinions because treators are usually "most able to provide a detailed, longitudinal picture" of the claimant's medical impairments.  20 C.F.R. § 404.1527(d)(2).  When the treating doctor's opinion "is well-supported by medically

---

[1]The Commissioner's regulations define "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2).  Treating sources often express more than one medical opinion, including "at least one diagnosis, a prognosis and an opinion about what the individual can still do." SSR 96-2p, 1996 WL 374188, at *2.  When an administrative law judge fails to give a good reason for rejecting a treator's medical opinion, remand is required unless the failure does not ultimately affect the decision, *i.e.*, the error is *de minimis*.  *Wilson*, 378 F.3d at 547.  So reversible error is not committed where the treator's opinion "is patently deficient that the Commissioner could not possibly credit it;" the administrative law judge's findings credit the treator's opinion or makes findings consistent with it; or the decision meets the goal of 20 C.F.R. § 404.1527(d)(2) but does not technically meet all its requirements.  *Id. See, Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013).

14

acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record" the Commissioner "will give it controlling weight. "  *Id.*

Even though a claimant's treating physician may be expected to have a greater insight into his patient's condition than a one-time examining physician or a medical adviser, Congress specifically amended the Social Security Act in 1967 to provide that to be disabling an impairment must be "medically determinable." 42 U.S.C. 423(d)(1)(A). Consequently, a treating doctor's opinion does not bind the Commissioner when it is not supported by detailed clinical and diagnostic test evidence.  *Warner v. Commissioner of Social Security,* 375 F.3d 387, 390 (6th Cir. 2004);*Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779-780 (6th Cir. 1987); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1983); *Halsey v. Richardson*, 441 F.2d 1230, 1235-1236 (6th Cir. 1971); *Lafoon v. Califano*, 558 F.2d 253, 254-256 (5th Cir. 1975).  20 C.F.R. §404.1513(b), (c), (d), 404.1526(b), and 404.1527(a)(1)[2].

The Commissioner's regulations provide that she will generally "give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you." 20 C.F.R. § 404.1527(d)(1).  When a treating source's

_____

[2]Section 404.1527(a)(1) provides:
You can only be found disabled if you are unable to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.  *See* §404.1505.  Your impairment must result from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  *See* §404.1508.

opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. § 404.1527(d)(2).

When the treating source's opinion is well-supported by objective medical evidence and is not inconsistent with other substantial evidence, that ends the analysis. 20 C.F.R. § 404.1527(c)(2); Social Security Ruling 96-2p. *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013). The Commissioner's regulations require decision-makers "to provide 'good reasons' for discounting the weight given to a treating-source opinion. [20 C.F.R.] § 404.1527(c)(2)."[3] *Gayheart*, 710 F.3d at 375.

The Commissioner has issued a policy statement about how to assess treating sources' medical opinions. Social Security Ruling 96-2p. It emphasizes:

1. A case cannot be decided in reliance on a medical opinion without some reasonable support for the opinion.

2. Controlling weight may be given only in appropriate circumstances to medical opinions, *i.e.*, opinions on the issue(s) of the nature and severity of an individual's impairment(s), from treating sources.

3. Controlling weight may not be given to a treating source's medical opinion unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques.

4. Even if a treating source's medical opinion is well-supported, controlling weight may not be given to the opinion unless it also is "not inconsistent" with the other substantial evidence in the case record.

---

[3]Section 404.1527(c)(2) provides, in relevant part: "We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."

5.      The judgment whether a treating source's medical opinion is well supported and not inconsistent with the other substantial evidence in the case record requires an understanding of the clinical signs and laboratory findings and what they signify.

6.      If a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight; *i.e.*, it must be adopted.

7.      A finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected. It may still be entitled to deference and be adopted by the adjudicator.

The focus at this step is solely on whether the treating-source opinion is well-supported by objective medical evidence and not inconsistent with other substantial evidence.  In making this determination the factors for assessing the *weight* to give to the medical opinions of any medical source, 20 C.F.R. § 404.1527(c), are not used.  These come into play only when there are good reasons not to give the treating-source opinion controlling weight.  20 C.F.R. § 404.1527(c)(2)[4]; *Gayheart*, 710 F.3d at 376.

---

[4]Section 404.1527(c)(2) provides, in relevant part:
If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion.

(Emphasis added.)

If there are good reasons to find that the treating-source opinion is not controlling, then the decision-maker turns to evaluating all the medical source evidence and determining what weight to assign to each source, including the treating sources. [5]

The Commissioner's regulations require the decision-maker to considers the length of the relationship and frequency of examination; nature and extent of the treatment relationship; how well-supported the opinion is by medical signs and laboratory findings; its consistency with the record as a whole; the treating source's specialization; the source's familiarity with the Social Security program and understanding of its evidentiary requirements; and the extent to which the source is familiar with other information in the case record relevant to decision. 20 C.F.R. § 404.1527(c)(1) through (6).  Subject to these guidelines, the Commissioner is the one responsible for determining whether a claimant is disabled.  20 C.F.R. § 404.1527(e).

---

[5]Even when the treating source's opinion is not controlling, it may carry sufficient weight to be adopted by the Commissioner:

> Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 404.1527. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

SSR 96-2p.

The case law is consistent with the principals set out in Social Security Ruling 96-2p.  A broad conclusory statement of a treating physician that his patient is disabled is not controlling.  *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).  For the treating physician's opinion to have controlling weight it must have "sufficient data to support the diagnosis." *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 536, 538 (6th Cir. 1981); *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985).  The Commissioner may reject the treating doctor's opinions when "good reasons are identified for not accepting them."  *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1988); 20 C.F.R. § 404.1527(c)(2)("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion"); *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004).  Even when the Commissioner determines not to give a treator's opinion controlling weight, the decision-maker must evaluate the treator's opinion using the factors set out in 20 C.F.R. § 404.1527(d)(2).  *Wilson*, 378 F.3d at 544; *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).  There remains a rebuttable presumption that the treating physician's opinion "is entitled to great deference."  *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 242 (6th Cir. 2007); *Hensley*, above.  The Commissioner makes the final decision on the ultimate issue of disability.  *Warner v. Commissioner of Social Security*, 375 F.3d at 390; *Walker v. Secretary of Health & Human Services*, 980 F.2d 1066, 1070 (6th Cir. 1992); *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847, 855 (6th Cir. 1986); *Harris v. Heckler*, 756 F.2d at 435; *Watkins v. Schweiker*, 667 F.2d 954, 958 n.1 (11th Cir. 1982).

19

<u>Treating physician: Opinion.</u>   During the course of a detailed, lengthy review of the medical evidence that fairly summarized that evidence (*PageID* 81-92), the administrative law judge concluded that Dr. Mason's opinion was not entitled to controlling weight:

> it is not well supported by the objective medical signs and findings, and is not consistent with the evidence submitted by the claimant's other treating physicians.  Dr. Mason's opinion that the claimant is totally disabled is an opinion on an issue reserved to the Commissioner.  The undersigned has considered his opinion that the claimant is unable to do any meaningful work on a full-time basis, but notes that the objective signs and findings set forth in his progress notes do not support this opinion.  The medical records show that the claimant's coronary artery disease is stable, and that she has had few episodes of angina and no shortness of breath or dyspnea on exertion.  The evidence shows that her hypertension is well controlled with medication.  The claimant had a bout of Bell's palsy in 2007, but this has not recurred since that time.  There is no evidence that she has any symptoms related to anemia or hyper-lipidemia.  The claimant's symptoms of GERD are also well controlled by medication.  The undersigned notes that there is no evidence to support a finding that the claimant's depression and anxiety are severe enough to be disabling.  The claimant reported responding well to Celexa, and she has not required treatment by a mental health professional.

(*PageID* 89.)

The administrative law judge's decision gives good reasons for rejecting Dr. Mason's opinion and carefully reviewed the medical record to conclude that Dr. Mason's clinical examinations, the examinations by treating specialists, and the medical tests were consistent with Kozlowski retaining the ability to perform a reduced range of sedentary work.  *See Gayheart*, 710 F.3d at 376.

The administrative law judge could have weighed the evidence and found Plaintiff disabled. However, in a close case, where there is substantial evidence supporting the administrative law judge's resolution of the disputed facts, the Court must affirm even if it would likely have resolved the disputed facts in plaintiff's favor had it been a trier of fact. *Nunn v. Bowen*, 828 F.2d 1140, 1144 (6th Cir. 1987); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). There is a large zone of choice where the Commissioner's decision to deny benefits is supported by substantial evidence, and, had the Commissioner granted benefits, that decision also would have been supported by substantial evidence. *Mullen v. Secretary of Health & Human Services*, 800 F.2d 535, 548 (6th Cir. 1986)(*en banc*). In close cases, the Commissioner's decision must be affirmed so long as there is substantial evidence supporting the Commissioner's fact determinations "because there is a 'zone of choice' within which the Commissioner can act, without fear of court interference." *Mullen*, 800 F.2d at 545(citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984))." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001).

**Conclusions.** For the reasons set forth above, it is **RECOMMENDED** that the decision of the Commissioner of Social Security be **AFFIRMED** and that judgment be entered for the Defendant Commissioner of Social Security.

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1)(B); Rule 72(b),

Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *Thomas v. Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also, Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).

         s/Mark R. Abel           
United States Magistrate Judge