```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                       EASTERN DIVISION
```

Misty Elaine Kozlowski,

    Plaintiff,

  v.                              Case No. 2:12-cv-885

Carolyn W. Colvin,
Acting Commissioner of
Social Security,

    Defendant.

<u>ORDER</u>

Plaintiff, Misty Elaine Kozlowski, brings this action under 42 U.S.C. §§ 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits and supplemental security income. This matter is before the court for consideration of defendant's July 19, 2013, objections to the July 5, 2013, report and recommendation of the magistrate judge, recommending that the court affirm the decision of the Commissioner. For the reasons stated below, the court overrules plaintiff's objections and adopts the magistrate judge's report and recommendation.

<u>I. Standard of Review</u>

If a party objects within the allotted time to a report and recommendation, the court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Upon review, the court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

The court's review "is limited to determining whether the Commissioner's decision 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also*, 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). Put another way, a decision supported by substantial evidence is not subject to reversal, even if the reviewing court might arrive at a different conclusion. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). "Substantial evidence exists when 'a reasonable mind could accept the evidence as adequate to support a conclusion [and] . . . presupposes that there is a zone of choice within which the decision-makers can go either way, without interference by the courts.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (internal citation omitted). Even if supported by substantial evidence, however, "'a decision of the Commissioner will not be upheld where the [Commissioner] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

II. Plaintiff's Objections

A. Weight Given Opinion of Treating Physician

1. Applicable Standards

The Commissioner has implemented regulations concerning how medical opinions, including those of a treating physician, are to

be weighed. The Commissioner has also issued a policy statement, Social Security Ruling 96-2p, 1996 WL 374188 (Soc. Sec. Admin. July 2, 1996), to guide an ALJ's assessment of a treating-source opinion. An opinion from a medical source who has examined a claimant is generally given more weight than one from a source who has not performed an examination. 20 C.F.R. §§404.1502, 404.1527(c)(1). An opinion from a medical source who regularly treats the claimant is afforded more weight than one from a source who has examined the claimant but does not have an ongoing treatment relationship. 20 C.F.R. §§404.1502, 404.1527(c)(2).

Treating-source opinions must be given "controlling weight" if: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §404.1527(c)(2). The term "substantial evidence" denotes a quality of evidence amounting to "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion that is contrary to the conclusion expressed in the medical opinion." Soc. Sec. Rul. No. 96-2p, 1996 WL 374188 at *3.

Even if the opinion of the treating doctor does not meet these "controlling weight" criteria, this does not mean that the opinion must be rejected; rather, it "may still be entitled to deference and be adopted by the adjudicator." Soc. Sec. Rul. No. 96-2p, 1996 WL 374188 at *1. If the Commissioner does not give a treating-source opinion controlling weight, then the opinion is weighed based on factors such as the length, frequency, nature, and extent of the treatment relationship, the treating source's area of specialty, and the degree to which the opinion is consistent with

the record as a whole and is supported by relevant evidence. C.F.R. §404.1527(c)(2)-(6); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013).

The Commissioner is required to provide "good reasons" for discounting the weight given to a treating-source opinion. §404.1527(c)(2). These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. No. 96-2p, 1996 WL 374188 at *5; *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007). This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Plaintiff objects to the finding of the magistrate judge that the administrative law judge ("ALJ") properly found that the opinion of Dr. Trent Mason, plaintiff's treating primary care physician, should not be given controlling weight. The magistrate judge concluded:

> The administrative law judge's decision gives good reasons for rejecting Dr. Mason's opinion and carefully reviewed the medical record to conclude that Dr. Mason's clinical examinations, the examinations by treating specialists, and the medical tests were consistent with Kozlowski retaining the ability to perform a reduced range of sedentary work.

Doc. 14, p. 20. This court agrees.

In his decision of June 30, 2011, PageID 76-93, the ALJ reviewed Dr. Mason's treatment notes from May 2008 to May 2011, noting that Dr. Mason prescribed medication for and/or noted

4

plaintiff's various ailments, including gastroesophageal reflux symptoms, gastritis, coronary artery disease, hyperlipidemia, hypertension, anxiety, irritable bowel syndrome, and back pain. The ALJ reviewed and thoroughly summarized numerous records from plaintiff's treating specialist physicians. The ALJ considered the opinions of state agency medical and psychological experts who evaluated plaintiff at the initial and reconsideration levels of appeal. At a hearing held on June 6, 2011, the ALJ heard plaintiff's testimony and testimony from Larry G. Kontosh, a vocational expert.

2. Neurological Complaints Following a Concussion in 2008

The ALJ noted that on November 21, 2008, Dr. Mason saw plaintiff for various neurological complaints, including headaches, visual changes and short-term memory loss, after plaintiff hit her head on an air conditioning unit. Dr. Mason recommended a neuropsychological evaluation. PageID 85. The ALJ further observed that plaintiff was seen on December 4, 2008, by Dr. Movassaghi, a neurologist, at which time plaintiff complained about headaches and a left facial droop similar to a previous episode of Bell's palsy she had experienced in the past. Dr. Movassaghi stated that there was no indication for treatment of Bell's palsy at that time, and prescribed medication for the headaches. The ALJ noted that there "are no further records regarding the claimant's Bell's palsy or post-concussive symptoms, which apparently have resolved." PageID 85.

3. Gastritis

The ALJ further stated that on May 8, 2008, Dr. Mason saw plaintiff following a stomach biopsy that revealed mild chronic

gastritis and mild fibrosis of musoca propria. Plaintiff was evaluated by Dr. Sanjay Chaudhry, a gastroenterologist, on January 23, 2009, for complaints about reflux and noted that plaintiff had a moderate-sized hiatal hernia, non-erosive reflux and gastritis. PageID 85-86. When Dr. Chaudhry saw plaintiff on July 27, 2009, she stated that the burning was much better since she had stopped smoking. On January 14, 2010, plaintiff complained to Dr. Chaudhry about chronic diarrhea. Dr. Chaudhry diagnosed irritable bowel syndrome and prescribed medication. A colonoscopy on February 9, 2010, revealed diverticula and hemorrhoids, and a high fiber diet was recommended. PageID 86. After summarizing this course of treatment, the ALJ stated that "there is no indication that the claimant has any work-related limitation of function due to her gastrointestinal symptoms/impairments" and that there was no indication that her symptoms substantiated by the endoscopic findings of mild chronic gastritis and a moderate-sized hiatal hernia are severe enough to prevent plaintiff from working. PageID 86, 91.

4. Anxiety and Depression

The ALJ next noted that in September and October of 2008, plaintiff complained to Dr. Mason about anxiety. Dr. Mason's notes for March 26, 2009, reflect that plaintiff was placed on Celexa for her symptoms of depression. When he saw plaintiff on May 21, 2009, plaintiff stated that she was doing fine on Celexa. PageID 86. Dr. Mason noted that on December 16, 2009, plaintiff told him that she was doing better on an increased dosage of Celexa. PageID 87.

The ALJ also summarized a psychological evaluation performed on June 1, 2009, by David R. Bousquet, M.Ed., a psychologist. Mr.

Bousquet reported that plaintiff was less depressed taking Celexa, and that plaintiff denied any history of psychiatric hospitalization.  Page ID 86.  Mr. Bousquet concluded that plaintiff's ability to relate to others, to maintain adequate persistence and pace, and to deal with the stress of day-to-day work activity was mildly impaired, while her ability to understand, follow and remember simple or complex instructions, and to maintain attention and concentration in the performance of simple, repetitive tasks was not impaired.  PageID 87.

The ALJ stated that he gave "significant weight" to Mr. Bousquet's opinions "as he is an expert in psychology, and his opinion is well supported by the mental status evaluation and is consistent with the other evidence of record." PageID 87.  The ALJ further noted that although plaintiff complained to Dr. Madhu Dharawat, her treating cardiologist, on November 16, 2010, about stress and anxiety, and Dr. Dharawat told her that Dr. Mason might want to refer her to a psychiatrist or psychologist, plaintiff "has never sought treatment with a mental health professional, nor has she required psychiatric hospitalization." PageID 87.  The ALJ also accepted the opinion of the state agency psychologists that plaintiff's mental impairment was not severe.  PageID 92.

<u>5. Back Pain</u>

The ALJ further observed that on April 29, 2010, Dr. Mason diagnosed plaintiff with acute or chronic thoracic and lumbar spasm.  Dr. Mason noted that plaintiff had a herniated disc and might require physical therapy, but that this was "a short-term issue."  PageID 88.  Dr. Mason prescribed pain medication.  Dr. Mason saw plaintiff again for low back pain on December 10, 2010,

7

and February 24, 2011, and requested x-rays. Those x-rays "revealed mild interspace narrowing from L1 to L5 and mild degenerative changes from L4 to S1 and in the lower thoracic spine, as well as interspace narrowing and degenerative changes from C5 to C7. PageID 88. The ALJ then noted that "there are few positive findings documented in regard to the claimant's low back. X-rays findings were mild, and there have been no documented neurological abnormalities or findings indicative of nerve root or spinal cord compression." PageID 88.

6. Asthma

The ALJ also noted that Dr. Mason saw plaintiff on June 3, 2010, for an asthma attack. A previous chest x-ray on July 23, 2009, revealed no acute pulmonary process, and plaintiff's heart size was normal. Dr. Mason gave plaintiff a steroid shot and prescribed an inhaler. He treated plaintiff on November 8, 2010, for allergic rhinitis, which plaintiff usually developed twice a year; a chest x-ray indicated that her lungs were clear. PageID 88. The ALJ also noted hospital records dated April 27, 2011, which indicated that plaintiff had some COPD and chronic bronchitis issues but no significant shortness of breath. He concluded by stating:

> The undersigned notes that the claimant was not treated for any pulmonary problems prior to 2010. She has not been treated for any frequent exacerbations of asthma or COPD, and her lungs have generally been clear upon examination. The undersigned finds no evidence of a "severe" pulmonary impairment.

PageID 88. The ALJ also noted that "there are no x-ray finding or pulmonary function studies that would support a diagnosis of COPD" and that plaintiff was treated on only one occasion for an asthma

8

attack, that she had not required treatment for frequent breathing problems, and that her lungs had been clear except for one episode of coarse breath sounds on November 29, 2010. Page ID 88, 91.

### 7. Coronary Disease

The ALJ also summarized the records concerning plaintiff's treatment for coronary disease. Plaintiff underwent coronary bypass surgery in July of 2007, with no complications. PageID 82. A stress test on September 21, 2007, was negative for exercise-induced ischemic changes. Dr. Dharawat, plaintiff's treating cardiologist, noted on November 8, 2007, that plaintiff had episodes of chest discomfort for five minutes after exercising, which usually resolved after five minutes. On November 30, 2007, Dr. Dharawat noted that a cardiac catheterization performed on November 27, 2007, had shown no significant obstructive disease amenable to revascularization, that plaintiff's grafts were open, and that she was feeling well. PageID 82. Dr. Dharawat's records for February 17, 2009, disclosed that plaintiff took another exercise stress test on February 9, 2009, which had shown no significant reversible defect. PageID 82. Dr. Dharawat stated that plaintiff seemed to be doing very well in terms of her coronary artery disease, and her hypertension was fairly well controlled. PageID 83. Dr. Dharawat's records further revealed that after complaining of episodes of chest discomfort and shortness of breath, plaintiff underwent angioplasty with the placement of four stents on November 18, 2010. A subsequent ambulatory stress test on December 10, 2010, was negative for exercise-induced ischemic EKG changes. Plaintiff was evaluated by Dr. Dharawat on April 15, 2011, at which time her EKG was unchaged

from the previous test.  Dr. Dharawat reported that plaintiff was currently pain-free, with occasional chest pressure not requiring nitroglycerin, that her hypertension and blood pressure were low. PageID 83.

The ALJ also noted that plaintiff was seen at the hospital on April 27, 2011, while complaining of chest pain, but that her cardiac enzymes were negative, and an EKG showed no significant changes from baseline, and no significant shortness of breath. PageID 84.  The ALJ concluded:

> The undersigned notes that the claimant's coronary artery disease has generally been stable since her myocardial infarction in 2007.  The evidence indicates that she has not experienced frequent angina, shortness of breath or dyspnea on exertion.  Her EKGs have been stable.  There is no indication that the claimant's coronary artery disease would prevent her from performing a range of light work on a sustained basis.

PageID 84.

8. Incontinence

The ALJ also reviewed the records of Dr. Cesar R. Pizarro, a gynecologist, who diagnosed plaintiff with urinary incontinence on March 26, 2007.  Plaintiff underwent surgery, specifically, an Obturator sling procedure, which was not successful.  PageID 84. Plaintiff was further evaluated by Dr. George V. Jirak, a gynecologist and urologist, on September 1, 2010, at which time plaintiff reported that she leaked at least five times daily and had to wear protective undergarments.  On October 10, 2010, Dr. Pizarro recommended that plaintiff undergo a TVT/mid-urethral sling procedure to treat her recurrent stress urinary incontinence. PageID 84.  The ALJ noted plaintiff's testimony at the hearing that she had not yet been cleared for this surgery.  PageID 84.  He

further stated that plaintiff "did not testify to any work-related limitation of function resulting from the incontenence, and the evidence does not indicate that she would have any such limitations." PageID 91.

### 9. Additional Evidence

The ALJ also considered the opinion of the state agency medical experts who evaluated plaintiff and limited her to a range of medium work. PageID 91-92. However, the ALJ noted the additional evidence received at the hearing, which included the testimony of plaintiff and a vocational expert, as well as the angioplasty and stent placement, which occurred on November 18, 2010, after the evaluation by the state agency experts, led him to conclude that "claimant is somewhat more limited than was originally thought by the State Agency medical experts," and that "while her coronary artery disease is now stable, the evidence supports a finding that she should be limited to no more than light work." PageID 91-92.

### 10. Dr. Mason's Opinion Regarding Disability

Plaintiff's objection focuses on the ALJ's consideration of a letter authored by Dr. Mason, dated November 1, 2010, and addressed "To Whom It May Concern" which stated:

> [T]his letter is regarding my medical opinion that, because of her chronic medical conditions, and how she has been doing both physically and emotionally, at least for the last couple of years, Misty cannot hold any meaningful, gainful employment or job. She definitely cannot do 40 hours of any type of work, which would not matter if it was anything from a labor perspective, or something nonlabor perspective. In my medical opinion, she cannot do any meaningful work. Again, these are chronic medical conditions, and she is unstable at this time, certainly from an anxiety and depressive standpoint as well, which we are working on.... Again, this letter

> is to strongly emphasize the point that it is my medical opinion that Misty Kozlowski is totally disabled, per the definition, and that she cannot do any gainful, meaningful employment.

PageID 579. This is the only instance noted by plaintiff where one of her treating physicians opined that she was totally incapable of performing any meaningful employment.

Addressing Dr. Mason's opinion letter of November 1, 2010, the ALJ stated:

> The undersigned has not given controlling weight to Dr. Mason's opinion, as it is not well supported by the objective medical signs and findings, and is not consistent with the evidence submitted by the claimant's other treating physicians. Dr. Mason's opinion that the claimant is totally disabled is an opinion on an issue reserved to the Commissioner. The undersigned has considered his opinion that the claimant is unable to do any meaningful work on a full-time basis, but notes that the objective signs and findings set forth in his progress notes do not support this opinion. The medical records show that the claimant's coronary artery disease is stable, and that she has had few episodes of angina and no shortness of breath or dyspnea on exertion. The evidence shows that her hypertension is well controlled with medication. The claimant had a bout of Bell's palsy in 2007, but this has not recurred since that time. There is no evidence that she has any symptoms related to anemia or hyperlipidemia. The claimant's symptoms of GERD are also well controlled by medication. The undersigned notes that there is no evidence to support a finding that the claimant's depression and anxiety are severe enough to be disabling. The claimant reported responding well to Celexa, and she has not required treatment by a mental health professional.

PageID 89.

In his letter of November 1, 2010, Dr. Mason offered his conclusory opinion that plaintiff was disabled and unable to work. The ALJ was correct in noting that he was not required to accept a treating physician's conclusory opinion on the ultimate issue of

disability. 20 C.F.R. §404.1527(e)(1). The determination of disability is ultimately the prerogative of the Commissioner, not the treating physician. *Warner v. Comm'r of Social Security*, 375 F.3d 387, 391 (6th Cir. 2004). The ALJ may reject such determinations when good reasons are identified for not accepting them. *Maple v. Apfel,* 14 F.App'x 525, 536 (6th Cir. 2001)(citing *Duncan v. Secretary of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986)).

This court agrees with the magistrate judge's conclusion that the ALJ correctly applied the standards of the treating physician rule in evaluating Dr. Mason's opinions. The ALJ considered each of the factors listed in 20 C.F.R. §§404.1527(c)(2)-(6) and 416.927(c)(2)-(6); a formulaic recitation of the factors is not required. *See Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010)("If the ALJ's opinion permits the claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion, strict compliance with the rule may sometimes be excused."). In his thorough discussion of the medical evidence in the record, the ALJ summarized Dr. Mason's treatment records from 2008 to 2011, and explained, with reference to Dr. Mason's treatment records and the records of plaintiff's other treating physicians, why he believed that Dr. Mason's opinions were not based on objective medical findings and were contradicted by substantial evidence in the record to the contrary. The administrative law judge identified good reasons for considering but not accepting Dr. Mason's opinions in a manner sufficient to permit an informed review by this court. Plaintiff's objection to the ALJ's analysis of Dr. Mason's opinions is denied.

13

B. Failure to Obtain Clarification from Dr. Mason

Plaintiff further argues that the ALJ should have contacted Dr. Mason for clarification of his opinions rather than assigning them no weight, particularly because Dr. Mason's letter of November 1, 2010, predated her angioplasty with the placement of four stents on November 18, 2010. However, under the pertinent regulations, claimants must prove their disability to the Commissioner. *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006)(citing 20 C.F.R. §404.1512(a)). "Only under special circumstances–when a claimant is without counsel, not capable of presenting an effective case, and unfamiliar with hearing procedures–does the ALJ have a special duty to develop the record." *Norman v. Comm'r of Social Security*, 37 F. App'x 765 (6th Cir. 2002)(citing *Lashley v. Secretary of Health & Human Servs.*, 708 F.2d 1048, 1051-52 (6th Cir. 1983)); *see also Smith v. Comm'r of Social Security*, 473 F. App'x 443, 445 (6th Cir. 2012)(ALJ did not err in failing to obtain testimony of medical advisor at hearing where claimant was represented by counsel); *Nabours v. Comm'r of Social Security*, 50 F. App'x 272, 275-76 (6th Cir. 2002)(ALJ had no special duty to obtain MRI report which was not filed with the record). Here, there is nothing in the record indicating that plaintiff, who was represented by counsel at the hearing, would have been precluded from obtaining and presenting a supplemental letter from Dr. Mason. The ALJ had no obligation to solicit such a letter, and this branch of plaintiff's objection is denied.

III. Conclusion

Having reviewed the record *de novo*, the court determines that plaintiff's objections are not well taken, and that there is

14

substantial evidence supporting the ALJ's determination that plaintiff is not disabled, as defined in the Social Security Act. Accordingly, the court overrules plaintiff's objections (Doc. 15) and adopts the magistrate judge's report and recommendation (Doc. 14).  The Commissioner's decision is affirmed, and this action is dismissed.

Pursuant to Sentence 4 of 42 U.S.C. § 405(g), the clerk shall enter final judgment affirming the decision of the Commissioner and dismissing this action.

It is so ordered.


Date: August 23, 2013             _____s/James L. Graham_____
                                  James L. Graham
                                  United States District Judge